UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| OLIVER HILL | NO.: 14-00103-BAJ-RLB |

### RULING AND ORDER

Before the Court is Defendant Oliver Hill's ("Hill") **Motion to Suppress (Doc. 19),** seeking to suppress "the firearm seized in this matter." (*Id.* at p. 2). The Government filed a memorandum in opposition. (Doc. 22). On January 12, 2015, the Court held an evidentiary hearing on the motion, and granted defense counsel's motion to file post-hearing briefs. (*See* Docs. 28, 30, 31). For the reasons explained below, Hill's Motion will be **DENIED.**

   I.   BACKGROUND

On April 24, 2014, Hill was arrested by members of the United States Marshals Service Fugitive Task Force[1] ("Task Force") at 12012 Province Place, Apartment A, in Baton Rouge, Louisiana, pursuant to a felony arrest warrant. Upon arriving at the two-story location, agents made contact with and secured a male (later identified as Hill), a female, and some children downstairs. Because Hill's cousin, Leonard Hill, a second fugitive, was believed to be at the same location, Task Force Officer Michael Lorio ("Lorio") proceeded upstairs. While

---

[1] The Task Force is comprised of members of the United States Marshals Service as well as local law enforcement agents.

JURY

conducting his sweep, Lorio opened the door to the master bedroom closet and observed what appeared to be the handle of a firearm partially covered by a blanket on a shelf in plain view.[2] Next to the firearm was Hill's State of Louisiana identification card and bank card. Hill was subsequently charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1 at p. 1).

The question raised by Hill's motion is whether the firearm must be suppressed because it resulted from an illegal search. Hill argues that Lorio's testimony is unreliable because it does not match the report of Task Force Officer Leonard Starnes ("Starnes"), who wrote the report documenting the arrest of Hill and seizure of the firearm.

## II. DISCUSSION

At the outset, the Court finds Lorio's and Starnes's divergent versions of the events surrounding Hill's arrest disconcerting,[3] and the fact that Lorio did not author a more comprehensive substantive report perplexing. The sloppy documentation of the investigation has put the Court in an uncomfortable position. Nevertheless, the inconsistencies between Lorio's and Starnes's versions are insufficient to lead the Court to conclude that Lorio's testimony was unreliable.

---

[2] Specifically, the firearm was an HS Products XDS .45 caliber pistol, with the serial number S3110448.

[3] Starnes's report states that Hill was in the master bedroom sleeping when the Task Force entered. (Defense Exhibit 5). Agents then "conducted a secondary search of the residence for their safety, as well as the safety of other occupants inside the residence." (*Id.*). It was during the course of this search that Lorio located the pistol on the shelf in the bedroom closet. (*Id.*).

Unlike many Fourth Amendment contexts, the law applicable here is quite clear, and indeed, undisputed by the parties. There are three types of lawful searches relevant to the instant matter:

> First, incident to an arrest, law enforcement officers may contemporaneously search areas within the arrestee's immediate control to prevent the destruction of evidence or procurement of a weapon. Second, officers may search areas immediately adjoining the place of arrest, such as closets and other spaces, from which a surprise attack could occur. Probable cause or reasonable suspicion is not necessary for these first two variations. Third, officers may also perform cursory "protective sweeps" of larger areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched.

*United States v. Mata*, 517 F.3d 279, 285 (5th Cir. 2008). The search conducted in the instant matter, falls within the third category of cursory protective sweeps.

On April 24, 2014, members of the Task Force executed an arrest warrant at 12012 Province Place, Apartment A, Baton Rouge, Louisiana. Information collected by agents in advance of that date led them to believe that both Hill and his cousin would likely be found together. Upon entering the premises, agents made immediate contact with Hill, but not the second fugitive. As a result, Lorio proceeded to sweep the premises looking for Hill's cousin. Lorio's testimony confirmed that his search extended only to areas in which a person reasonably could be found, including the bedroom closet. Neither the reports created in conjunction with the investigation and arrest (Defense Exhibits 4, 5), nor any testimony offered at the evidentiary hearing contradicted Lorio's statement that upon opening the closet, he saw what, based on his experience, he believed to be the handle of a

firearm partially covered by a blanket on a shelf that was eye-level. Thus, the admissibility of the firearm hinges on the plain view doctrine.

The plain-view doctrine permits law enforcement officers to seize items if "(1) [they] lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was 'immediately apparent;' and (4) [they] had a lawful right of access to the item." *United States v. Roberts*, 612 F. 3d 306, 312 (5th Cir. 2010) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). Here, agents had warrants for both Hill and his cousin. They entered the premises pursuant to those warrants, and searched only in places where a person could reasonably be found; thus, they lawfully entered. According to Lorio's testimony, the handle of the weapon was visible at eye-level immediately upon opening the closet, and thus, was in "plain view." Based on his experience and investigation, Lorio knew Hill was a convicted felon, and believing the item to be a firearm, its incriminating character was immediately apparent to him. Lorio then had a lawful right of access to the firearm. Thus, the Court finds that the firearm was seized in plain view.

In conclusion, although the whereabouts of Hill upon arriving, and the method of apprehending Hill differed according to Starnes's and Lorio's testimony, the facts surrounding the discovery of the firearm remain unchallenged. Further, Lorio's testimony was not inconsistent with his report dated April 29, 2014. (Defense Exhibit 4). As Hill highlights in his post-hearing brief, the decisive question here is "is Lorio's testimony that the gun was in plain view prior to his

lifting the blanket sufficiently credible for this court to accept?" (Doc. 30 at p. 4). Because no evidence was presented to repudiate Lorio's testimony, this Court's answer must be "yes."[4]

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Suppress (Doc. 19)** is **DENIED.**

**IT IS FURTHER ORDERED** that a jury trial is set for **April 20 – 21, 2015 at 9:00 a.m.** A pretrial conference will be held in chambers on **April 9, 2015 at 2:00 p.m.**

Baton Rouge, Louisiana, this 10th day of March, 2015.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[4] The Court is compelled to note that this was a close call, and had Lorio been unavailable to testify, this likely would have been a very different case.